(129 App. Div. 574.)

LEWIS BLUE POINT OYSTER CULTIVATION CO. v. BRIGGS.

(Supreme Court, Appellate Division, Second Department.  December 30, 1908.)

1. NAVIGABLE WATERS (§ 4*)—CROWN GRANTS—EFFECT.
    Public rights, like that of navigation in the navigable waters of the state, are vested in the government in trust for the people, and do not pass by crown grants.
    [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 1; Dec. Dig. § 4.*]

2. NAVIGABLE WATERS (§ 37*)—CROWN GRANT—CONSTRUCTION.
    A crown grant, including land under water in a bay constituting an arm of the sea, and conveying as appurtenances all and every of the rights of fishing, fowling, hunting, hawking, etc., did not impair the public right of navigation, to which the grant was subject.
    [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

3. NAVIGABLE WATERS (§ 7*)—PUBLIC RIGHTS—DREDGING—"RIGHT OF NAVIGATION."
    The public "right of navigation" includes the government's right to facilitate and improve navigation by the erection of beacons, the removal of obstructions, the cutting and deepening of channels, etc., which right

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is vested in the national government by the commerce clause of the federal Constitution.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 18; Dec. Dig. § 7.*]

4. NAVIGABLE WATERS (§ 36*)—LAND UNDER WATER—USE.

Plaintiff's right as lessee of land under the waters of a bay, a navigable arm of the sea, to use the same for the cultivation of oysters, was subject to the government right to dredge in the necessary improvement of navigation; plaintiff being only entitled to a reasonable opportunity to remove the oysters before the commencement of dredging operations.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 180–200; Dec. Dig. § 36.*]

5. PUBLIC LANDS (§ 114*)—GRANTS—CONSTRUCTION.

A public grant must be construed strictly against the grantees, as nothing will pass thereby, unless expressly granted.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 114.*]

Appeal from Special Term, Suffolk County.

Action by the Lewis Blue Point Oyster Cultivation Company against J. Marvin Briggs. Judgment for defendant (58 Misc. Rep. 55, 110 N. Y. Supp. 37), and plaintiff appeals. Affirmed.

This is a suit to restrain the defendant from dredging out a channel 200 feet wide across a tract of land under water in Great South Bay, Long Island, N. Y., on which the plaintiff, as lessee of the owners, has beds of oysters which it brought from a distance and cast overboard there, in order that they might grow larger and improve and then be taken up for market. The defendant has a contract with the government of the United States to do the said work for the improvement of navigation. The said bay is a navigable arm of the sea. The plaintiff claims it cannot be deprived of its oysters by the dredging of the defendant, and that the said use of the land under water cannot be impaired in the future thereby, without compensation being first made therefor, on the ground that the said oysters and use are private property within the fifth amendment of the Constitution of the United States which forbids the taking of private property by government without just compensation.

The lessors of the plaintiff derive title through a grant of the British crown when New York was a British colony, the said bay being included in the tract of lands described by metes and bounds in the said grant, which also conveys as appurtenances all and every of the rights of "fishing, fowling, hunting, hawking," etc.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

Asa A. Spear, for appellant.
Selah B. Strong, for respondent.

GAYNOR, J. After the absolutism of the King was destroyed by Magna Charta, at all events, it became a settled principle tenaciously clung to until it became undisputed, that public rights, like that of navigation in the navigable waters of the realm, were inalienable by the King, being vested in him not individually, but in the crown or sovereignty in trust for the people at large. The crown grant under which the plaintiff's lessors derive whatever title they have to Great South Bay is subject to this principle, if there were need to invoke it. But the terms of the said grant do not purport to grant in whole or in part, or to impair in any way, the public right of navigation. The grantees

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

took subject to such public right. Moore's Hall's History & Law of the Foreshore (3d Ed.) pp. 446, 533. This the learned counsel for the plaintiff admits, but seeks to reduce the servitude to the navigation of the bay in its natural state at the time of the grant, and as it should thereafter be at any given time from generation to generation, unchanged except by wind and tide. These are the words of his brief:

"We do not claim the absolute ownership of these lands under water and fishing rights subject to no servitude whatever; they are subject to the public right of navigation. But this servitude is the navigation of the bay in its natural state."

On the contrary, the public right of navigation always included the right of government to facilitate and improve navigation, by the erection of beacons, the removal of obstructions, the cutting and deepening of channels, etc., which latter right in this country is vested in the national government by the provision of its Constitution for the regulation of commerce with foreign countries and among the states. Gilman v. Philadelphia, 3 Wall. 725, 18 L. Ed. 96; Pennsylvania v. Wheeling, etc., Bridge Co., 18 How. 421, 15 L. Ed. 435; S. C. v. Ga., 93 U. S. 4, 23 L. Ed. 782; Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331; Gibson v. U. S., 166 U. S. 269, 17 Sup. Ct. 578, 41 L. Ed. 996. And the grantees from the crown in this case took subject to this measure of the public right of navigation. It could hardly be contended that the government could not appropriate an acre of these lands under the waters of this bay to set a lighthouse and its appurtenances on it without compensating the plaintiff and his lessors for the use thereof they would thus be deprived of. The right of such public use existed when the sovereign grant under which they claim was made, and was in no way impaired thereby. Whatever right the plaintiff and its lessors may have to deposit oysters, or hides for the tannery, or any other chattels, on the bottom of this bay, is subject to such public use, and therefore an obligation to remove such property and surrender possession of the land for such public use at any time. The same is the case in respect of the government keeping or providing a sufficient depth of water to meet the necessities of navigation from generation to generation as channels shift or fill up, or the draughts of vessels are made deeper.

Notwithstanding the said admission in the plaintiff's brief, the contention seems to be mooted that the express grant of the right of fishing being made, it excluded every other right in the crown to the extent that they should be inconsistent with each other. The rule in respect of public grants is the reverse, i. e., that nothing is granted thereby unless expressly. They are construed strictly against the grantees. Id. p. 782. Moreover, the contention could only be applicable where the thing claimed is something the crown could grant. It may also be well to note that the plaintiff is not exercising a right of fishery in this bay. He is only using it as a depository of oysters brought from elsewhere to be improved in size and flavor by its peculiar bottom and mixture of salt and fresh water.

If the government or the defendant should enter upon the plaintiff's oyster beds and destroy or take up the oysters without giving the plain-

tiff reasonable opportunity to take them up and remove them, an entirely different question would be presented.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur.